1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   EASTERN DISTRICT OF CALIFORNIA

10                        ----oo0oo----

11   MONARCH PLUMBING COMPANY,
     INC.,
12                                    NO. CIV. S-06-1357 WBS KJM
             Plaintiff,
13
         v.                           MEMORANDUM AND ORDER RE:
14                                    MOTION TO DISMISS

15   RANGER INSURANCE COMPANY and
     RIVERSTONE CLAIMS MANAGEMENT,
16   LLC,

17           Defendants.

18                        ----oo0oo----

19           Plaintiff Monarch Plumbing Company, Inc., has filed

20   suit against defendants Ranger Insurance Company and Riverstone

21   Claims Management, LLC alleging, inter alia, breach of contract

22   and breach of the covenant of good faith and fair dealing.

23   Defendants now move to dismiss for failure to state a claim.  For

24   the following reasons, the court will grant defendant's motion in

25   part.

26   ///

27   ///

28   ///

1  I.    Factual and Procedural Background

2          Plaintiff is a contract plumbing business.  (Compl. ¶

3  1.)  On December 15, 1998, it obtained a Commercial General

4  Liability ("CGL") policy from defendant Ranger Insurance Company

5  ("Ranger").  (Townsend Decl. Ex. A at 1, 15.)  This policy

6  covered, among other things, defects in plaintiff's product or

7  work.  (Id.)  When claims for defective plumbing installations

8  arose, however, plaintiff was dissatisfied with how Ranger and

9  its construction defects claims manager, defendant Riverstone

10 Claims Management ("Riverstone"), handled these disputes.

11 (Compl. ¶ 9(a).)  It thus filed this lawsuit to clarify the

12 parties' rights and duties under the insurance policy.

13          In particular, plaintiff objects to defendants' refusal

14 to permit plaintiff to have input on claim assessments, defense

15 strategy, and decisions regarding whether to settle claims and

16 for how much.  (Id.)  Plaintiff also asserts that the defense

17 attorneys retained by defendants could not represent its

18 interests and defendants' interests at the same time.  (Id. ¶

19 9(e).)  Finally, plaintiff complains that defendants involved

20 themselves in the resolution of additional claims that plaintiff

21 did not actually tender for defense. (Id. ¶ 9(f), 13, 16(k).)

22          As a result of this course of conduct, plaintiff

23 alleges that it has been required to pay higher insurance

24 premiums, which have resulted from defendants' autocratic

25 decisions to pay off many of the claims.  (Id. ¶ 16(a).)

26 Plaintiff seeks declaratory judgment establishing its right to

27 decide whether or not to tender claims to defendants for defense

28 (Claim One), damages for breach of contract and breach of the

1   covenant of good faith and fair dealing (Claims Two and Three),

2   and disgorgement of ill-gotten profits, actionable under

3   California Business and Professions Code §§ 17200-17210 (Claim

4   Four).  Defendants dispute plaintiff's ability to raise any of

5   these claims, primarily arguing that an insurer's right to pursue

6   defense of its insureds, without input from the insured, is well

7   established under California law and that defendants' actions did

8   not violate the terms of the insurance contract between the

9   parties.  Additionally, defendants contend that Riverstone, as an

10  agent of Ranger, cannot be held liable under any circumstances.

11  II.  Discussion

12      A.   Legal Standard

13          On a motion to dismiss, the court must accept the

14  allegations in the complaint as true and draw all reasonable

15  inferences in favor of the pleader.  Scheuer v. Rhodes, 416 U.S.

16  232, 236 (1974); Cruz v. Beto, 405 U.S. 319 (1972).  The court

17  may not dismiss for failure to state a claim unless "it appears

18  beyond doubt that plaintiff can prove no set of facts in support

19  of his claim which would entitle him to relief."  Van Buskirk v.

20  CNN, Inc., 284 F.3d 977, 980 (9th Cir. 2002).  Dismissal is

21  appropriate, however, where the pleader fails to allege facts

22  that support a cognizable legal theory.  Balistreri v. Pacifica

23  Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988); see also Conley

24  v. Gibson, 355 U.S. 41, 47 (1957) (complaint must "give the

25  defendant fair notice of what the plaintiff's claim is and the

26  grounds upon which it rests").

27          In general, the court may not consider material other

28  than the facts alleged in the complaint when deciding a motion to

3

1  dismiss.  <u>Anderson v. Angelone</u>, 86 F.3d 932, 934 (9th Cir. 1996)

2  ("A motion to dismiss . . . must be treated as a motion for

3  summary judgment . . . if either party . . . submits materials

4  outside the pleadings in support or opposition to the motion, and

5  if the district court relies on those materials.").  However, the

6  court may consider extrinsic documents, such as contracts and

7  insurance policies, when "the plaintiff's claim depends on the

8  contents of a document, the defendant attaches the document to

9  its motion to dismiss, and the parties do not dispute the

10 authenticity of the document, even though the plaintiff does not

11 explicitly allege the contents of that document in the

12 complaint."  <u>Knievel v. ESPN</u>, 393 F.3d 1068, 1076 (9th Cir.

13 2005); <u>see also</u> <u>Fin. Sec. Assurance, Inc. v. Stephens, Inc.</u>, 450

14 F.3d 1257, 1264 (11th Cir. 2006) ("This court recognizes an

15 exception, however, in cases in which a plaintiff refers to a

16 document in its complaint, the document is central to its claim,

17 its contents are not in dispute, and the defendant attaches the

18 document to its motion to dismiss.").  This exception is designed

19 to "[p]revent[] plaintiffs from surviving a Rule 12(b)(6) motion

20 by deliberately omitting references to documents upon which their

21 claims are based."  <u>Parrino v. FHP, Inc.</u>, 146 F.3d 699, 706 (9th

22 Cir. 1998) (citation omitted), <u>superceded by statute on other</u>

23 <u>grounds as recognized in</u> <u>Abrego Abrego v. The Dow Chem. Co.</u>, 443

24 F.3d 676, 681 (9th Cir. 2006).

25       Plaintiff argues that the court should not consider the

26 terms of the policy it purchased from Ranger because "the

27 gravamen of the Complaint is violation of basic contractual

28 duties and implied covenants, rather than of specific policy

                                  4

1  provisions."  (Pl.'s Opp'n to Defs.' Mot. to Dismiss 3 n.1.)

2  However, as noted above, the Ninth Circuit does not require that

3  the complaint "explicitly allege the contents of [a] document"

4  before allowing its consideration on a motion to dismiss.

5  Knievel, 393 F.3d at 1076.  The document need only be "integral

6  to the plaintiff's claims . . . ."  Parrino, 146 F.3d at 706 n.4.

7  Plaintiff's attempt to distance its complaint, which alleges

8  breach of contract, from the insurance policy at issue is simply

9  absurd.  Had plaintiff argued that other terms, terms outside the

10 scope of the policy, governed the relationship between these

11 parties, then the court might have reason to believe that

12 plaintiff's complaint is based on some other agreement.  But

13 plaintiff has not disputed the authenticity of the policy or

14 suggested that this is not the document that governs the

15 relationship between the parties.  Consequently, because the

16 policy establishes defendants' duties to (and covenants with)

17 plaintiff on which plaintiff bases its complaint, it is

18 unquestionably central to plaintiff's claims and the court may

19 consider it here.  Cf. Stephens, 450 F.3d at 1264 (considering an

20 insurance policy that was not attached to the complaint because

21 the complaint referred to it and relied on its "effect").

22         B.    Defendants' Liability in General

23               1.    Declaratory Relief (Claim One)

24         In its complaint, plaintiff first seeks a declaration

25 establishing its right to determine whether the claims against it

26 have any merit before making tender.  (Compl. ¶ 13.)

27 Additionally, plaintiff seeks declaratory judgment as to whether

28 the attorneys procured by defendants have a conflict of interest

1  in representing plaintiff and whether plaintiff has a right to

2  direct, or at least be informed of, claim management strategy.

3  (Id.)  Finally, plaintiff seeks a determination that defendants

4  have wrongfully prompted its other insurers to open files on and

5  defend claims without instructions from plaintiff to do so.

6  (Id.)  The court will thus address in turn whether these

7  allegations are sufficient to survive defendants' motion to

8  dismiss plaintiff's claim for declaratory relief.

9                    a.    Defending Un-tendered, Meritless Claims

10             In California, "the insurer's obligation to defend and

11  investigate is not triggered until Plaintiff tenders the defense

12  of a third party lawsuit to the insurer."  Icasiano v. Allstate

13  Ins. Co., 103 F. Supp. 2d 1187, 1191 (N.D. Cal. 2000) (emphasis

14  added) (citing Foster-Gardner, Inc. v. Nat'l Union Fire Ins. Co.

15  of Pittsburgh, 18 Cal. 4th 857, 879 (1998)); North Star

16  Reinsurance Corp. v. Superior Court, 10 Cal. App. 4th 1815, 1823

17  (1992) (same); see also Montrose Chem. Corp. v. Superior Court, 6

18  Cal. 4th 287, 295 (1993) ("The defense duty is a continuing one,

19  arising on tender of defense . . . ."  (emphasis added)).

20  Defendants argue that they were compelled to proactively pursue

21  even mere incipient claims because their "duty to defend attaches

22  whenever the insurer [simply] ascertains facts which may give

23  rise to ['even a bare possibility of'] coverage."  (Defs.' Mot.

24  to Dismiss 8.)  However, the cases they rely on in support of

25  this proposition are easily distinguishable from this action.

26  Significantly, in both instances, unlike this litigation, the

27  insureds actually tendered their claims to the insurance

28  companies.  Montrose Chem., 6 Cal. 4th at 293 ("Montrose gave

1  notice to the carriers and requested that they provide it with a

2  defense pursuant to their policies."); <u>Gray v. Zurich Ins. Co.</u>,

3  65 Cal. 2d 263, 267 (1966) ("Dr. Gray notified defendant of the

4  suit, stating that he had acted in self defense, and requested

5  that the company defend.").  Defendants have simply taken

6  statements from <u>Montrose</u> and <u>Gray</u> out of context.[1]  They

7  therefore have no legal support for their belief that an

8  insurance company, as a rule,[2] may unilaterally pursue matters on

9  behalf of its insureds without their consent or tender.[3]

10          Nevertheless, the court's analysis does not end here,

11  because the terms of the contract also govern when an insurer's

12  duty to defend arises.  In relevant part, the insurance agreement

13  between the parties provides that Ranger "will have the right and

14  duty to defend the insured against any 'suit' seeking . . .

---

16      [1]  At oral argument, defendants suggested that many of the
additional insureds covered under the CGL policy did in fact
17  tender their claims, so as to trigger the duty to defend.  As
these facts do not appear from the pleadings, however, the court
18  will not consider them in deciding a motion to dismiss.

19      [2]  Insurers can, of course, use language in the policy to
secure a right to pursue untendered claims.
20

21      [3]  Requiring insureds to tender claims before imposing the
duty to defend, and conversely permitting insureds to pursue
their own defense prior to tender, is consistent with other
22  developments in California insurance law.  For example, provided
that the policy at issue has a no-voluntary-payment provision, an
23  insured cannot demand reimbursement from its insurer for costs
voluntarily incurred in the defense of an un-tendered claim.
24  <u>Truck Ins. Exchange v. Unigard Ins. Co.</u>, 79 Cal. App. 4th 966,
981 (2000) (citing <u>Gribaldo, Jacobs, Jones & Assocs. v. Agrippina
25  Versicherunges A.G.</u>, 3 Cal. 3d 434, 449 (1970)).  Thus, absent
policy language to the contrary, an insured can independently
26  defend a claim against it, and the insurer will not suffer any
detriment as a result.  <u>See also</u> <u>Truck Ins. Exchange</u>, 79 Cal.
27  App. 4th at 975 ("If an insured breaches a notice provision,
resulting in substantial prejudice to the defense, the insurer is
28  relieved of liability.").

1  damages [for property damage]."  (Townsend Decl. Ex. A at 13.)

2  It further states that Ranger "may at [its] discretion

3  investigate any 'occurrence' and settle any claim or 'suit' that

4  may result."[4]  (Id.)  But perhaps most notably, it imposes on

5  plaintiff a duty to notify Ranger "as soon as practicable of an

6  'occurrence' or an offense which may result in a claim."  (Id. at

7  20.)  Under the policy, "'[o]ccurrence' means an accident,

8  including continuous or repeated exposure to substantially the

9  same general harmful conditions."  (Id. at 23.)

10         The court has no way of knowing at this stage in the

11  proceedings whether the un-tendered claims that defendants

12  settled constituted an occurrence, which defendants had a right

13  to investigate and settle and plaintiff had a duty to disclose.

14  This inquiry is a factual one and therefore one that the court

15  cannot undertake on a motion to dismiss.

16                   b.    Appointing Conflicted Counsel

17         Plaintiff also complains that defendants wrongfully

18  supplied defense attorneys who suffered from a conflict of

19  interest and made decisions about whether to settle claims

20  without input from plaintiff.  Under California law, "[a]n

21  insurer has the right to control the defense it provides its

22  insured so long as there is not a conflict of interest."  James 3

23  Corp. v. Truck Ins. Exchange, 91 Cal. App. 4th 1093, 1103 n.3

24

25        [4]    This language is significant because by reserving a
26  right to defend both claims and suits, Ranger assured that it had
    a right to settle both formal lawsuits and "demand[s] for
    something as a right, or as due."  Foster-Gardner, 18 Cal. 4th at
27  879 (quoting Phoenix Ins. Co. v. Sukut Constr. Co., Inc., 136
    Cal. App. 3d 673, 677 (1982)); see also id. ("'A formal lawsuit
28  is not required before a claim is made.'").

8

1 (2001) (citations omitted); <u>see also</u> Cal. Civ. Code § 2860

2 (requiring that insurers provide independent counsel for an

3 insured when a conflict of interest arises); <u>W. Polymer Tech.,</u>

4 <u>Inc. v. Reliance Ins. Co.</u>, 32 Cal. App. 4th 14, 24 (1995) ("In

5 general, the insurer is entitled to control settlement

6 negotiations [and settle for an amount within the policy limits]

7 without interference from the insured.").  Although "not every

8 conflict of interest entitles an insured to an insurer-paid

9 independent counsel," whether the circumstances here warranted

10 appointment of such will involve a factual determination and

11 consequently, dismissal of the complaint on this ground is not

12 warranted.[5]  <u>James 3</u>, 91 Cal. App. 4th at 1101-02.

13                    c.    <u>Encouraging Other Insurers to Defend</u>

14                          <u>Meritless Claims</u>

15         Plaintiff further complains that defendants improperly

16 involved its other insurers in efforts to settle claims against

17 it.  Significantly, when an insurer's duty to defend is

18 triggered, under some circumstances, the insurer may involve the

19 insured's other insurers in the defense of claims.  <u>Compare</u> <u>Truck</u>

20 _____

21         [5]    Defendants argue that plaintiff's claims based on an
alleged conflict of interests theory should be dismissed because

22 "Plaintiff fails to allege in its Complaint or assert in its
Opposition any facts which would require RANGER to provide

23 Plaintiff with independent counsel pursuant to California Civil
Code § 2860."  (Defs.' Reply 9.)  Essentially, defendants ask the

24 court to hold plaintiff to a heightened pleading standard, in
defiance of the extremely liberal standard provided in Federal

25 Rule of Civil Procedure 8(a).  However, under the federal rules,
plaintiff need only "give the defendant[s] fair notice of what

26 the . . . claim is and the grounds upon which it rests."  <u>Conley</u>,
355 U.S. at 47.  Plaintiff's assertion that defendants provided

27 conflicted counsel meets this threshold.  Defendants must utilize
the "liberal opportunity for discovery and the other pretrial

28 procedures established by the Rules to [discern] more precisely
the basis of both claim and defense."  <u>Id.</u> at 47-48.

1  Ins. Exchange, 79 Cal. App. 4th at 980 (discussing how co-

2  insurers can be involved), with Diamond Heights, 227 Cal. App. 3d

3  at 582 (discussing limits on involving excess insurers in defense

4  of a claim).  However, because the court cannot determine from

5  the face of the complaint and the related policy documents that

6  defendants actually had a duty to defend, it similarly cannot say

7  at this time that defendants had a right to involve plaintiff's

8  other insurers in a defense of claims against its insured.

9  Moreover, the court does not have information at this time

10  regarding the terms under which these other insurers provided

11  insurance, which might have had some bearing on defendants'

12  ability to involve them in the settlement of claims, or potential

13  claims, against plaintiff.  See Diamond Heights, 227 Cal. App. 3d

14  at 577-80 (discussing (1) the legal rights of primary and excess

15  insurers to control litigation and settlement and (2) how the

16  language in an excess insurer's policy can alter those rights).[6]

17  Consequently, plaintiff's claim for declaratory relief is further

18  justified on these grounds.

19  ///

20

21     [6]     The complaint does not specify whether the "other"
    insurers were primary or excess insurers.  This might be
22  significant in this case because, "as between a primary insurer
    and an excess insurer, the former is solely responsible for
23  defense costs . . . ."  Truck Ins. Exchange, 79 Cal. App. 4th at
    978 (citing Signal Cos., Inc. v. Harbor Ins. Co., 27 Cal. 3d 359,
    365-69 (1980)) (emphasis added).  Excess insurers can, at their
24  discretion, "agree to undertake the defense" "once the primary
    insurer tenders its full policy limits."  Id. (emphasis added)
25  (charging primary insurers with responsibility for full defense
    costs even if the claim is "for a sum in excess of the primary
26  coverage"); Diamond Heights, 227 Cal. App. 3d at 582.  In
    contrast, co-insurers can join the defense at its inception,
27  regardless of whether the first insurer to undertake a defense
    has tendered its full policy limits.  Truck Ins. Exchange, 79
28  Cal. App. 4th at 980.

1
        2.    Breach of Contract (Claim Two)

2           Plaintiff's claim for breach of contract accuses

3 defendants of breaching their obligations under the insurance

4 policy by (1) unilaterally pursuing claims that plaintiff has not

5 tendered for defense and settling claims in excess of the amount

6 they are worth; (2) encouraging plaintiff's other insurers to

7 open files on and defend claims without plaintiff's permission;

8 (3) imposing defense attorneys who suffer from a conflict of

9 interest; and (4) engaging in the practice of setting high loss

10 reserves on construction defect claims.  (Compl. ¶ 16(a)-(k).)[7]

11 However, these allegations, as plaintiff itself points out, are

12 not based "upon specific terms and contents of the insurance

13 policies."  (Pl.'s Opp'n to Defs.' Mot to Dismiss 4 n.1.)

14 Rather, plaintiff alleges that defendants acted outside of the

15 terms of their agreement and failed to adhere to general legal

16 obligations not addressed by the terms of their agreement.

17 Consequently, although the court can address these matters via

18 declaratory judgment or through a claim of breach of the covenant

19 of good faith and fair dealing, the complaint as drafted fails to

20 state a claim for breach of contract.[8]

21

22        [7]    In paragraph 16(a)-(k) of the complaint, plaintiff
   identifies 11 ways in which defendants have allegedly breached
23 the agreement for insurance.  Some of these subsections elaborate
   on, or simply reiterate, more general accusations and the court
24 has thus distilled these allegations into four broader categories
   for ease of analysis.
25
        [8]    Given this outcome, the court need not address the
26 viability of plaintiff's allegations that setting high loss
   reserves on construction defect claims, and consequently causing
27 plaintiff's premiums to increase, inflicted actionable injury.
   These assertions are only part of plaintiff's breach of contract
28 claim and as explained in the text, the court cannot discern, and

11

1                   3.     Breach of the Covenant of Good Faith and Fair

2                          Dealing (Claim Three)

3              Plaintiff's third cause of action is for breach of the

4    covenant of good faith and fair dealing.  Under California law,

5    all insurance contracts contain an implied covenant of good faith

6    and fair dealing.  Hanson v. Prudential Ins. Co. of Am., 783 F.2d

7    762, 766 (9th Cir. 1985) (citing Egan v. Mutual of Omaha Ins.

8    Co., 24 Cal. 3d 809, 818 (1979)).  This covenant requires that

9    "'neither party . . . do anything which will injure the right of

10   the other to receive the benefits of the agreement.'"  Gruenberg

11   v. Aetna Ins. Co., 9 Cal. 3d 566, 573 (1973) (quoting Comunale v.

12   Traders & Gen. Ins. Co., 50 Cal. 2d 654, 658 (1958)).  The duty

13   is separate from those mandated by the terms of a typical

14   insurance policy--"to defend, settle, or pay."  Id. at 574.

15   Instead, it involves an "obligation, deemed to be imposed by the

16   law, under which the insurer must act fairly and in good faith in

17   discharging its contractual responsibilities."  Id.

18             Plaintiff here alleges that defendants over-stepped

19   their right to defend by pursuing un-tendered claims contrary to

20   the provisions of the contract.  (Compl. ¶ 13, 22, 23(c)

21

---

22   plaintiff has failed to explain, how these actions violated the
     terms of the insurance agreement.  Moreover, the workers'
23   compensation policy cases on which plaintiff relies to sustain
     these allegations, cases which defendants convincingly argue are
24   inapposite in a case involving a GCL policy, deal with a breach
     of the violation of the covenant of good faith and fair dealing--
25   not a breach of contract--claim.  Sec. Officers Serv., Inc. v.
     State Comp. Ins. Fund, 17 Cal. App. 4th 887, 894 (1993)
26   (recognizing that failure "to handle claims 'properly' or
     'expediently' might constitute a breach of a policy's implied
27   covenant of good faith and fair dealing, but not a breach of
     contract terms that merely establish an unspecified "duty to
28   defend").

                                  12

1  (accusing defendants of "thwarting Plaintiff's efforts to

2  minimize its loss history" by pursuing claims before defendant

3  tendered them).)   In addition, plaintiff alleges that defendants

4  engaged in the practice of pursuing settlements that were less

5  than the unreasonably high loss reserves, yet greater than the

6  amount warranted by the claims.  (Compl. ¶ 16(b), 22.)   In doing

7  so, plaintiff contends that defendants favorably manipulated

8  their own financial position, at plaintiff's expense. (<u>Id.</u>

9  (claiming that defendants "artificially increase[d] their

10  combined reported fees, earnings and profits, all to the

11  detriment of Plaintiff").)   <u>See</u> <u>Anguiano v. Allstate Ins. Co.</u>,

12  209 F.3d 1167, 1169 (9th Cir. 2000) (citing, <u>inter</u> <u>alia</u>,

13  <u>Comunale</u>, 50 Cal. 2d at 659) ("California law requires that an

14  insurer take into account the interest of the insured and give it

15  at least as much consideration as it does to its own interest

16  when evaluating settlement offers.").   Finally, plaintiff has

17  alleged that defendants repeatedly provided conflicted counsel to

18  represent plaintiffs in these claims.  (Compl. ¶ 13, 16(j), 22.)[9]

19         Assuming these allegations to be true, plaintiff has

20  adequately asserted that defendants acted in their own interest

21  over that of their insured in assessing claims, which "in some

22  way injured [plaintiff's] right to receive the benefits of the

23  agreement." <u>Gruenberg</u>, 9 Cal. 3d at 573.   While plaintiffs may

24  not prevail on this issue on summary judgment or at trial, the

25  court cannot say at this stage that plaintiff will be unable to

26

27      [9]   Although plaintiff's explanation of the details of the
    purported conflict is lacking, it is sufficient to comport with
28  the liberal pleading standard provided by Rule 8.

13

1 prove any set of facts in support of this claim.

2          4.    Section 17200 Disgorgement (Claim Four)

3          Plaintiff's final claim is for unjust enrichment in

4 violation of California Business and Professions Code §§ 17200-

5 17210.  In support of this claim, plaintiff alleges, inter alia,

6 that by settling claims without merit, defendants have enriched

7 themselves (by "artificially increas[ing] their combined reported

8 fees, earnings and profits) at plaintiff's expense.  (Compl. ¶

9 31(g).)

10          The Unfair Competition Law ("UCL") prohibits "any

11 unlawful, unfair or fraudulent business act or practice."  Cal.

12 Bus. & Prof. Code § 17200.  California courts have interpreted

13 this to include just about everything the courts might find

14 objectionable.  Gafcon, Inc. v. Ponsor & Assocs., 98 Cal. App.

15 4th 1388, 1425 (2002) ("Virtually any law can serve as the

16 predicate for a Business and Professions Code section 17200

17 action; it may be . . . civil or criminal, federal, state or

18 municipal, statutory, regulatory, or court-made.").  Plaintiff

19 here has alleged, among other things, a violation of California

20 Civil Code § 2860 (requiring independent counsel when insurer's

21 interest conflict with those of the insured) and thus has

22 properly identified an "unlawful" business practice.

23 Additionally, plaintiff has alleged an injury--higher insurance

24 premiums--that may have resulted from a decision by allegedly

25 biased counsel to settle meritless claims.[10]  See Cal. Bus. &

26

27          [10]   Curiously, defendants rely on Heighley v. J.C. Penney
   Life Ins. Co., 257 F. Supp. 2d 1241 (C.D. Cal. 2003), for the
28 proposition that plaintiff's claim is barred because she has an

14

1  Prof. Code § 17204 ("Actions for any relief pursuant to this

2  chapter shall be prosecuted exclusively in a court of competent

3  jurisdiction . . . by any person who has suffered injury in fact

4  and has lost money or property as a result of such unfair

5  competition.").  Finally, the limited injunctive and monetary

6  relief available under the UCL is exactly what plaintiff seeks in

7  its fourth cause of action.  (Compl. Prayer for Relief ¶ 4(a),

8  (c).)  Plaintiff has thus properly plead a cause of action under

9  the UCL.

10        C.    Riverstone's Liability

11            Defendants separately contend that the complaint fails

12  to state a claim against Riverstone, who managed construction

13  defect claims for Ranger.  Riverstone was not a party to the

14  insurance contract on which these claims are based.  In Gruenberg

15  _____

16  alternative adequate remedy at law--a claim for breach of
    contract.  This assertion is, of course, inconsistent with
    defendants' position, and this court's determination, that
17  plaintiff has not alleged a claim for breach of contract.
    (Defs.' Mot. to Dismiss 2.)
18            Moreover, the court is skeptical that the test for
    establishing a UCL claim devised seemingly out of whole cloth in
19  Heighley is the correct one.  Heighley stated that, in the
    insurance context,
20        [a]llegations that are essential to plead a claim for
          violation of the [UCL] are: (1) plaintiff's status as
21        an insured or intended beneficiary of the insurance
          policy, (2) the existence of the policy, (3) the
22        insurer's conduct and that such conduct was an unfair,
          unlawful or fraudulent business practice in violation
23        of Bus. & Prof. Code § 17200, (4) plaintiff has no
          adequate remedy at law, (5) a request for injunctive
24        relief and or restitution . . . , and (6) a request for
          attorney's fees.
25  257 F. Supp. 2d at 1259.  Since "[t]he unfair competition law
    does not provide for attorney fees", the court is at a loss as to
26  why a plaintiff must request them as an "essential" element of
    its pleadings.  Walker v. Countrywide Home Loans, Inc., 98 Cal.
27  App. 4th 1158, 1179 (2002).  Likewise, the requirement that
    plaintiff have no adequate remedy at law is not found in the text
28  of the statute.

15

1  v. Aetna Ins. Co. the California Supreme Court established that

2  non-insurer defendants, including "corporation[s] engaged in the

3  business of investigating and adjusting insurance claims", are

4  "not parties to the agreements for insurance" nor are they

5  "subject to an implied duty of good faith and fair dealing."  9

6  Cal. 3d 566, 569 n.1, 575 (1973).  Similarly, Riverstone cannot

7  be held liable pursuant to the terms of an insurance agreement

8  between plaintiff and Ranger.

9          Significantly, though, the Gruenberg court did "not

10  consider the possibility that [the non-insurer defendants] may

11  have committed another tort in their respective capacities as

12  total strangers to the contracts of insurance."  Id. at 576.

13  Thus, it appears that plaintiff can, legally speaking, bring at

14  least some claims against non-insurer defendants, and nothing in

15  plaintiff's existing complaint precludes it from alleging

16  additional facts accusing Riverstone of other tortious conduct.

17  Accordingly, the court will grant plaintiff leave to amend its

18  complaint in the event that such claims can be alleged against

19  Riverstone.  Doe v. United States, 58 F.3d 494, 497 (9th Cir.

20  1995) ("In dismissing for failure to state a claim, 'a district

21  court should grant leave to amend even if no request to amend the

22  pleading was made, unless it determines that the pleading could

23  not possibly be cured by the allegation of other facts.'"

24  (quoting Cook, Perkiss & Liehe v. N. Cal. Collection Serv., 911

25  F.2d 242, 247 (9th Cir. 1990))).

26          Plaintiff's fourth cause of action, for violation of

27  California Business and Professions Code § 17200, is likewise not

28  cognizable with respect to Riverstone.  The relief available

16

1  under § 17200 is strictly limited to restitution--money damages

2  are not an option.  <u>Korea Supply Co. v. Lockheed Martin Corp.</u>, 29

3  Cal. 4th 1134, 1144 (2003).  Accordingly, because Ranger, and not

4  Riverstone, has collected the funds that plaintiff wants returned

5  (i.e., higher premiums), plaintiff has no cause of action against

6  Riverstone under the UCL.

7  III. <u>Conclusion</u>

8        The complaint fails to state a claim upon which relief

9  can be granted against any party for breach of contract and

10 against Riverstone on any claim.  Plaintiff might be able to cure

11 the defects discussed above through amendment.  Defendant's

12 arguments with respect to all remaining claims against Ranger are

13 premature at this stage of the proceedings.

14        IT IS THEREFORE ORDERED that

15        (1) defendants' motion to dismiss claim two be, and the

16 same hereby is, GRANTED;

17        (2) defendants' motion to dismiss the complaint with

18 respect to defendant Riverstone be, and the same hereby is,

19 GRANTED; and

20        (3) with respect to all other defendants and/or claims,

21 defendants' motion to dismiss be, and the same hereby is, DENIED.

22        Plaintiff is given 30 days from the date of this order

23 to file an amended complaint consistent with this order.

24 DATED:  September 23, 2006

25

26 _____
   WILLIAM B. SHUBB

27 UNITED STATES DISTRICT JUDGE

28

17