1  Robert W. Keaster (SBN 115847)
   Yvonne M. Schulte (SBN 237868)
2  CHARLSTON, REVICH & CHAMBERLIN LLP
   1925 Century Park East, Suite 1250
3  Los Angeles, California 90067-2746
   Telephone:  (310) 551-7000
4  Facsimile:  (310) 203-9321
   rkeaster@crcllp.com
5  yschulte@crcllp.com

6  Attorneys for Defendants
   RANGER INSURANCE COMPANY and
7  RIVERSTONE CLAIMS MANAGEMENT, LLC

8                  UNITED STATES DISTRICT COURT

9                  EASTERN DISTRICT OF CALIFORNIA

10

11  MONARCH PLUMBING              Case No. 2:06-cv-01357-WBS-KJM
    COMPANY, INC.,
12                               **REPLY MEMORANDUM OF
                 Plaintiff,       POINTS AND AUTHORITIES IN
13                                SUPPORT OF MOTION OF
                                  DEFENDANTS TO DISMISS
14       v.                       FIRST AMENDED COMPLAINT
                                  FOR FAILURE TO STATE A
15  RANGER INSURANCE COMPANY,     CLAIM**
    RiverStone CLAIMS
16  MANAGEMENT, LLC, and DOES 1   [FRCP 12(b)(6)]
    through 300,
17                               DATE:   December 11, 2006
                 Defendants       TIME:    1:30 p.m.
18                                CTRM:  5

19                               Assigned to the Honorable
                                  William B. Shubb
20

21

22

23

24

25

26

27

28

**REPLY MEMORANDUM IN SUPPORT OF MOTION OF DEFENDANTS TO DISMISS FIRST
AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM**

# TABLE OF CONTENTS

Page

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

III.  MONARCH HAS NOT ALLEGED THAT THERE ARE ANY AMBIGUITIES IN THE INSURANCE POLICY, THEREFORE, THE EXPRESS LANGUAGE OF THE POLICY SHOULD BE INTERPRETED BY THE COURT TO DETERMINE WHETHER A CLAIM FOR RELIEF FOR BREACH OF CONTRACT CAN BE SUSTAINED . . . . . 2

IV.   RANGER DID NOT BREACH THE ADDITIONAL INSURED ENDORSEMENT BY DEFENDING ADDITIONAL INSUREDS UNDER THE POLICY . . . . . . . . . . . . . . . 3

V.    RANGER DID NOT BREACH THE ADDITIONAL INSURED ENDORSEMENT BY SETTLING CLAIMS AGAINST ADDITIONAL INSUREDS UNDER THE POLICY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

VI.   IN ITS ARGUMENT THAT RANGER BREACHED THE INSURANCE CONTRACT, MONARCH ALLEGES ONLY THAT RANGER BREACHED THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING AND DOES NOT PROPERLY ALLEGE BREACH OF CONTRACT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

VII.  RANGER HAS A DIRECT AND IMMEDIATE INTEREST IN SUITS AGAINST ITS INSUREDS BECAUSE IT IS LIABLE FOR THE JUDGMENTS UNDER CALIFORNIA LAW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

VIII. RANGER DOES NOT HAVE TO ALLOW THE INSURED'S PERSONAL COUNSEL TO PARTICIPATE IN DEFENSE OR SETTLEMENT OF SUITS AGAINST AN INSURED; CALIFORNIA CIVIL CODE § 2860 PROVIDES INSUREDS WITH A RIGHT TO PARTICIPATE IN LITIGATION UNDER LIMITED AND SPECIFIC CIRCUMSTANCES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

IX.   MONARCH HAS FAILED TO STATE A CLAIM FOR RELIEF AGAINST RIVERSTONE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

X.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

**REPLY MEMORANDUM IN SUPPORT OF MOTION OF DEFENDANTS TO DISMISS FIRST AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM**

1

## TABLE OF AUTHORITIES

2   **State Cases**                                                                                     **Page(s)**

3
4   *Beck v. American Health Group Int'l, Inc.*
        (1989) 211 Cal. App. 3d 1555 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 7

5   *California Shoppers, Inc. v. Royal Globe Ins. Co.*
        (1985) 175 Cal. App. 3d 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
6
    *Egan v. Mutual of Omaha Ins. Co.*
7       (1979) 24 Cal.3d 809 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7-10

8   *Erkenbrecher v. Grant*
        (1921) 187 Cal. 7 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
9
    *Foley v. Interactive Data Corp.*
10      (1988) 47 Cal.3d 654 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

11  *Foster-Gardner, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*
        (1998) 18 Cal. 4th 857 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
12
    *Gray v. Zurich Ins. Co.*
13      (1966) 65 Cal. 2d 263 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

14  *Gruenberg v. Aetna Ins. Co.*
        (1973) 9 Cal.3d 566 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8-10
15
    *Hollywood Cleaning & Pressing Co. v. Hollywood Laundry Serv. Inc.*
16      (1932) 217 Cal. 124 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

17  *Institute of Veterinary Pathology, Inc. v. California Health Labs, Inc.*
        (1981) 116 Cal. App. 3d 111 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
18
    *James 3 Corporation v. Truck Insurance Exchange*
19      (2001) 91 Cal. App. 4th 1093 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

20  *Kaufman & Broad Communities, Inc. v. Performance Plastering, Inc.*
        (2006) 126 Cal.App.4th 212 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
21
    *Maryland Casualty Co. v. Nationwide Ins. Co.*
22      (1998) 65 Cal. App. 4th 21 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

23  *Montrose Chem. Corp. v. Superior Court*
        (1993) 6 Cal. 4th 287 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
24
    *NGOC Tran v. Farmers Group, Inc.*
25      (2002) 104 Cal. App. 4th 1202 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15-17

26  *New Hampshire Ins. Co. v. Ridout Roofing Co.*
        (1998) 68 Cal. App. 4th 495 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
27
    *North Star Reinsurance Corp. v. Superior Court*
28      (1992) 10 Cal. App. 4th 1815 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

1  *Novak v. Low, Ball & Lynch*
2      (1999) 77 Cal.App.4th 278 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

3  *Presley Homes v. Am. States Ins. Co.*
       (1990) 90 Cal. App. 4th 571 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

4  *Reliance Insurance Co. v. Superior Court*
5      (2000) 84 Cal. App. 4th 383 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

6  *Safeco Insurance Company of America v. The Superior Court of Contra Costa County*
       (1999) 71 Cal. App. 4th 782 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 12

7  *Samson v. Transamerica Ins. Co.*
8      (1981) 30 Cal. 3d 220 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

9  *Shea v. Leonis*
       (1939) 14 Cal. 2d 666 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

10 *Sonora Diamond Corp. v. Superior Court*
11     (2000) 83 Cal. App. 4th 523 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

12 *Western Polymer Tech. v. Reliance Ins. Co.*
       (1995) 32 Cal. App. 4th 14 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

13

14 **Federal Cases**

15 *Carolina Casualty Ins. Co. v. Bolling, Walter & Gawthrop,*
16     2005 U.S. Dist. LEXIS 20485 (E.D. Cal. May 31, 2005) pp. 21-22 . . . . . . . . . . . 7, 12

17 *Conley v. Gibson*
       (1957) 335 U.S. 41 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 *Icasiano v. Allstate Ins. Co.,*
19     103 F. Supp. 2d 1187 (N.D. Cal. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

20 *Katzir's Floor & Home Design. Inc. v. M-MLS.com,*
       394 F.3d 1143 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 19

21 *Nordberg, et al. v. Trilegiant Corporation, et al.,*
22     445 F. Supp. 2d 1082 (N.D. Cal. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

23 **Statutes**

24 California Civil Code
25     § 2860 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15
       § 2860(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

26 California Insurance Code
27     § 11580 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

28     § 11580(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

CHARLSTON, REVICH
& CHAMBERLIN LLP
2201s.wpd

iii
**REPLY MEMORANDUM IN SUPPORT OF MOTION OF DEFENDANTS TO DISMISS FIRST
AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM**

1

**Other Authorities**

California Practice Guide: Insurance Litigation
¶ 7:514.6 (TRG 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Federal Rules of Civil Procedure
Rule 12 (b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CHARLSTON, REVICH
& CHAMBERLIN LLP

2201S.WPD

REPLY MEMORANDUM IN SUPPORT OF MOTION OF DEFENDANTS TO DISMISS FIRST
AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM

I.   **INTRODUCTION**

Defendants RANGER INSURANCE COMPANY ("Ranger") and RIVERSTONE CLAIMS MANAGEMENT, LLC ("RiverStone") respectfully submit the following Reply to Plaintiff's Opposition to RANGER and RIVERSTONE's Motion to Dismiss Plaintiff's Claim for Relief for Breach of Contract in its First Amended Complaint ("FAC") against Ranger and RiverStone and all Claims for Relief against RiverStone.[1]

II.   **STANDARD OF REVIEW**

This Court previously held that Plaintiff MONARCH PLUMBING CO., INC's ("Monarch") Complaint failed to state a claim upon which relief could be granted against any party for breach of contract and against RiverStone on any claim.  However, Monarch was granted leave to amend.  In its Order on Ranger and RiverStone's FRCP 12(b)(6) Motion dated September 23, 2006 ("Order"), the Court outlined what needed to be alleged to assert a cognizable legal theory against RiverStone and a cognizable legal theory for breach of contract against Ranger.  Monarch has demonstrated through its FAC that it is incapable of properly alleging these claims.

Dismissal should be made with prejudice if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson* (1957) 335 U.S. 41, 45-46. In its FAC, Monarch reiterates the same allegations presented in its original Complaint. Therefore, Monarch's FAC should be dismissed in its entirety as to RiverStone,

---

[1] Monarch's Opposition was not timely filed in accordance with Local Rule 78-230(c) which requires responding party to personally serve opposing counsel not less than fourteen (14) days before the hearing or by mail or electronic service no less than seventeen (17) days before the hearing.  Since Monarch's Opposition was electronically served on November 27, 2006, fourteen (14) days before the hearing scheduled on December 11, 2006, Monarch's Opposition was untimely.  According to L.R. 78-230(c), no party will be entitled to be heard in opposition to a motion at oral arguments if opposition to the motion has not been timely filed by that party.  See L.R. 78-230(c) citing Local Rules 5-135(a) and 6-136(a).

1
REPLY MEMORANDUM IN SUPPORT OF MOTION OF DEFENDANTS TO DISMISS FIRST
AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM

1   with prejudice.  The Claim for Relief for Breach of Contract should also be

2   dismissed against Ranger, with prejudice.

3   **III.    MONARCH HAS NOT ALLEGED THAT THERE ARE ANY**

4   **AMBIGUITIES IN THE INSURANCE POLICY, THEREFORE, THE**

5   **EXPRESS LANGUAGE OF THE POLICY SHOULD BE**

6   **INTERPRETED BY THE COURT TO DETERMINE WHETHER A**

7   **CLAIM FOR RELIEF FOR BREACH OF CONTRACT CAN BE**

8   **SUSTAINED**

9        Although Monarch argues that "ambiguities in documents must be resolved

10  in Plaintiff's favor," (See Opposition, pg. 2, line 18)  Monarch has not alleged

11  that there are any ambiguities in the subject insurance policy.  Unless a plaintiff

12  alleges that particular provisions of an insurance policy are ambiguous and

13  identifies the special meaning the allegedly ambiguous provisions have, the court

14  will construe the express language of the contract to determine whether, as a

15  matter of law, the allegations can sustain a cause of action for breach.

16       [I]f the instrument is ambiguous, the pleader must allege the meaning
         he ascribes to it.  Where a written contract is pleaded by attachment
17       to and incorporation in a complaint, and where the complaint fails to
         allege that the terms of the contract have any special meaning, a
18       court will construe the language of the contract on its face to
         determine whether, as a matter of law, the contract is reasonably
19       subject to a construction sufficient to sustain a cause of action for
         breach.  This rule applicable on demurrer is simply a variation on the
20       well-recognized theme that it is solely a judicial function to interpret
         a written instrument unless the interpretation turns upon the
21       credibility of extrinsic evidence.

22  *Beck v. American Health Group Int'l, Inc.* (1989) 211 Cal. App. 3d 1555, 1561

23  (citations omitted).  Monarch has not alleged that any extrinsic evidence would

24  affect the interpretation of the subject insurance policy.  The Court previously

25  ruled that the allegations contained in Monarch's original Complaint do not

26  constitute a breach of any of the terms of the policy.  See Order on FRCP

27  12(b)(6) Motion, *15.  In its FAC, Monarch raised only one additional provision

28  in the insurance policy that it alleges was breached; the BLANKET

1 | ADDITIONAL INSURED(S) endorsement (the "AI Endorsement"). In raising

2 | the AI Endorsement, however, Monarch did not allege that it is ambiguous.

3 | **IV.   RANGER DID NOT BREACH THE ADDITIONAL INSURED**

4 | **ENDORSEMENT BY DEFENDING ADDITIONAL INSUREDS**

5 | **UNDER THE POLICY**

6 | In its Opposition, Monarch suggested that Ranger breached the AI

7 | Endorsement by defending and settling claims against additional insureds under

8 | the policy issued to Monarch because the AI Endorsement provides coverage only

9 | to the extent of the *liability* for acts, errors and omissions of Monarch. See

10 | Opposition pg. 2, fn 1. Apparently, and although not stated directly, Monarch is

11 | suggesting that Monarch must be found liable before Ranger can defend

12 | additional insureds or settle claims against them. It is not a breach of any of the

13 | terms of the insurance policy to defend or settle claims against additional insureds

14 | even when coverage ostensibly applies only to *liability* for Monarch's acts, errors

15 | and omissions because the policy expressly provides Ranger with the authority to

16 | defend and settle claims and suits against any insured. Moreover, under

17 | California law, an additional insured endorsement that does not expressly or

18 | implicitly limit a defense obligation imposes a duty to defend an additional

19 | insured upon the insurer. See *Presley Homes v. Am. States Ins. Co.* (1990) 90

20 | Cal. App. 4th 571, 576-577.

21 | In *Presley Homes*, as in the instant situation, the additional insured

22 | endorsement limited coverage to **liability** arising out of the named insured's

23 | work.[2] The Court in *Presly Homes* noted that the additional insured endorsement

24 |

25 | [2] The precise language in the *Presley* AI Endorsement was as follows: "Who Is an Insured (Section II) is amended to include [plaintiff] as an insured . . ., but

26 | only with respect to **liability** arising out of 'your work' for that insured by or for you." *Presley Homes v. Am. States Ins. Co., supra*, 90 Cal. App. 4th at 574

27 | (emphasis added).

28 | The language in the AI Endorsement of the insurance policy at issue in the instant action, is: "SECTION II - WHO IS AN INSURED, is amended to include the person(s) or organization(s) specifically designated as an Additional Insured(s) .

3

**REPLY MEMORANDUM IN SUPPORT OF MOTION OF DEFENDANTS TO DISMISS FIRST AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM**

1  amended the definition of the term "insured" in the policy to include the entity

2  the endorsement was issued to. "While the endorsements limited the coverage

3  for [the additional insured] to 'liability' arising from [the named insured's] work,

4  nothing in either the policies or the endorsements limited [the insurer's]

5  obligation to provide [the additional insured] with a defense." *Id*. at 575. See

6  also *Maryland Casualty Co. v. Nationwide Ins. Co.* (1998) 65 Cal. App. 4th 21,

7  31 [Where endorsement listed general contractor as an additional insured in event

8  it was "held liable" for the subcontractor's work, the endorsement did not

9  expressly or implicitly limit defense obligation and, therefore, a defense was

10  owed. "Since a defense duty is broader than an indemnification obligation, the

11  limitation on the scope of coverage does not eliminate the defense duty, but

12  instead merely forms the parameters for that duty."]. The parameter for that

13  duty is that the claim or suit against the additional insured has some causal

14  connection to the named insured's work. Whether the named insured is found

15  liable is irrelevant under California law as the duty to defend is broader than the

16  duty to indemnify.

17      In this case, the AI Endorsement amends the definition of the term

18  "insured" in the policy to include the additional insured as an insured. The AI

19  Endorsement does not limit Ranger's obligation to provide a defense to additional

20  insureds. Therefore, under California law, the duty to defend additional insureds

21  was triggered when Ranger ascertained facts that gave rise to a potential for

22  coverage irrespective of Monarch's actual *liability*. *Gray v. Zurich Ins. Co.*

23  (1966) 65 Cal. 2d 263, 276. See also California Practice Guide: Insurance

24  Litigation, at ¶ 7:514.6 (TRG 2005) ["Although this language ["held liable"]

25

26

27  . . [but] only to the extent of the liability for acts, errors and omissions of the
Named Insured as covered under this policy. No coverage is provided for liability
based upon the products, acts, errors and omissions of the Additional Insured(s)."

28  See Townsend Declaration, Ex. A, pg. 44.

CHARLSTON, REVICH
& CHAMBERLIN LLP
2201s.wpd

4
**REPLY MEMORANDUM IN SUPPORT OF MOTION OF DEFENDANTS TO DISMISS FIRST
AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM**

1   limited Insurance Co.'s obligation to indemnify Contractor, Contractor was still

2   an 'insured' under the policy, and hence entitled to a defense"].   That the

3   endorsement limits coverage to "liability" is irrelevant under California law

4   because the endorsement does not limit Ranger's duty to defend.

5   **V.     RANGER DID NOT BREACH THE ADDITIONAL INSURED**

6   **ENDORSEMENT BY SETTLING CLAIMS AGAINST ADDITIONAL**

7   **INSUREDS UNDER THE POLICY**

8   As discussed above, the AI Endorsement amends the policy to include as an

9   insured any person or organization specifically designated as an additional insured

10   and approved by Ranger. See AI Endorsement, Sect. A. [Townsend Declaration,

11   Ex. A, pg. 44].   The Insuring Agreement provides that Ranger "may at [its]

12   discretion investigate any 'occurrence' and settle any claim or 'suit' that may

13   result." [CGL Form, Sect. I.1.a, attached as Exhibit A to the Townsend

14   Declaration, page 13].   The insuring agreements contained in the contract between

15   Monarch and Ranger expressly provide Ranger with the discretion to settle any

16   claim or suit against *any* insured.   This Court has already held that the allegation

17   that Ranger breached the insurance contract by failing to evaluate claims on the

18   actual merits or lack of actual merits failed to state a claim.   See Order on FRCP

19   12(b)(6) Motion, *15.   It is not a breach of the insurance contract for Ranger to

20   settle claims or suits against insureds without regard to actual liability; it is an

21   express grant of discretionary power found in the insuring agreement.

22   **VI.   IN ITS ARGUMENT THAT RANGER BREACHED THE**

23   **INSURANCE CONTRACT, MONARCH ALLEGES ONLY THAT**

24   **RANGER BREACHED THE IMPLIED COVENANT OF GOOD**

25   **FAITH AND FAIR DEALING AND DOES NOT PROPERLY ALLEGE**

26   **BREACH OF CONTRACT**

27   Monarch alleges in its Opposition that certain cases cited by Ranger are not

28   controlling because insureds tendered the claims in those cases.   See Opposition,

5

**REPLY MEMORANDUM IN SUPPORT OF MOTION OF DEFENDANTS TO DISMISS FIRST
AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM**

1  pg. 5, lines 18-19.  Monarch is confusing concepts in its Opposition.  In its Order

2  on FRCP 12(b)(6) Motion, *16-17, the Court distinguished between the legal

3  theories of breach of the insurance policy and breach of some other duty imposed

4  by the contractual relationship between Ranger and Monarch.  Monarch has failed

5  to allege how its allegations, if true, constitute a breach of the insurance policy.

6       Under California law, an insurer has the right to settle claims against an

7  insured.  See *James 3 Corporation v. Truck Insurance Exchange* (2001) 91 Cal.

8  App. 4th 1093, 1103, fn. 3 [holding that the insurer's "right to control the

9  defense necessarily encompasses the right to determine what measures are cost

10 effective, bearing in mind liability and indemnity exposure."]  See also *Safeco*

11 *Insurance Company of America v. The Superior Court of Contra Costa County*

12 (1999) 71 Cal. App. 4th 782, 787, 789-790.  The insurer's right to settle claims

13 against an insured arise from the express terms of the contract between the insurer

14 and insured.  The cases cited by Ranger and RiverStone are not inapposite because

15 they hold that these actions do not constitute *a breach of contract*.  Whether settling

16 claims in the circumstances described by Monarch violates some other duty Ranger

17 has to Monarch, it does not constitute a breach of the contract between them.[3]

18 Despite numerous opportunities, Plaintiff has failed to cite a single case where a

19 California court has imposed liability upon a commercial general liability insurer

20 for settlement of claims within its policy limits.

21      Monarch argues again in its Opposition that the Court cannot consider the

22 terms of the policy in considering Ranger's motion because "the allegations on

23 which the Complaint is based are without regard to such provisions, and therefore it

24 is improper to consider them in determining the instant motion."  See Opposition,

25 pg. 5, fn. 2.  This assertion by Monarch is without merit.  The Court already held

26 that it may consider the insurance policy because it is unquestionably central to

27

28      [3] Since these claims were tendered by the additional insureds, Ranger and
RiverStone do not concede that defending and settling the claims violated any duty.

6
**REPLY MEMORANDUM IN SUPPORT OF MOTION OF DEFENDANTS TO DISMISS FIRST
AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM**

1   Monarch's claims. See Order on FRCP 12(b)(6) Motion, *7. The interpretation of

2   a written contract is solely a judicial function unless the interpretation turns upon

3   the credibility of extrinsic evidence. See *Beck v. American Health Group Int'l, Inc.*

4   (1989) 211 Cal. App. 3d 1555, 1561. Furthermore, Monarch is claiming that

5   Ranger breached the terms of the policy but is asserting that Ranger cannot defend

6   itself by citing the terms of the policy to show that they were not breached. Finally,

7   Monarch is confusing the concepts of breach of contract with breach of the implied

8   covenant of good faith and fair dealing.

9       The cases cited by Ranger and RiverStone hold that the policy provides the

10  insurer with the right to control the defense, including settlement. Although

11  Monarch is arguing that Ranger's defense and settlement of certain claims breached

12  the implied covenant of good faith and fair dealing by failing to consider the effect

13  of Monarch's loss history on future premiums with other insurers, Monarch has

14  failed to show that the cases are inapplicable to show that Ranger's defense and

15  settlement of claims and suits do not constitute a breach of the insurance policy.[4]

16      On the other hand, the cases cited by Monarch are inapposite to the facts of

17  this case and were centered around the implied covenant of good faith and fair

18  dealing - not a breach of the insurance policy. Monarch cites *Egan v. Mutual of*

19  *Omaha Ins. Co.* (1979) 24 Cal.3d 809, 818 for the proposition that the insurer

20

21  _____

22      [4] Although Monarch suggests that the policy does not provide Ranger with
    the right to control the defense because the words "control" and "identity" do not
    appear in the policy, Monarch ignores settled California law interpreting the policy

23  terms. For example, in *James 3 Corp. v. Truck Ins. Exchange* (2001) 91 Cal. App.
    4th 1093, 1103, the Court held that the insurer has the right to control the defense

24  even though it failed to pursue affirmative claims on behalf of the insured. In *New
    Hampshire Ins. Co. v. Ridout Roofing Co.* (1998) 68 Cal. App. 4th 495, 502, the

25  court found that the insurer's right to control the defense includes the right to
    negotiate settlement and that by accepting a liability insurance policy, the insured is

26  bound by those terms. See also *Carolina Casualty Ins. Co. v. Bolling, Walter &
    Gawthrop*, 2005 U.S. Dist. LEXIS 20485 (E.D. Cal. May 31, 2005) pp. 21-22 ["An

27  insurer generally has the right to select counsel; a contrary rule would be
    inconsistent with the insurer's right to control the defense and would place the

28  insurer in the untenable position of being financially liable but powerless to ensure
    the claim is properly defended."]

7

**REPLY MEMORANDUM IN SUPPORT OF MOTION OF DEFENDANTS TO DISMISS FIRST
AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM**

1   must give at least as much consideration to the welfare of its insured as it gives

2   its own interests.  Again, Monarch is confusing the obligations required by the

3   express terms of the contract and other obligations that may arise because of the

4   contractual relationship.  *Egan* specifically addresses the extent of the duties

5   imposed by the implied covenant of good faith and fair dealing in insurance

6   policies and does not support Monarch's claim that Ranger breached a term of the

7   contract.  In addition, Monarch omits important language in its citation.  What

8   *Egan* holds is "that the insurer, **when determining whether to settle a claim,**

9   must give at least as much consideration to the welfare of its insured as it gives

10  its own interests. ***The governing standard is whether a prudent insurer would***

11  ***have accepted the settlement offer*** if it alone were to be liable for the entire

12  judgment." *Id.* at. 818 (emphasis added).  Therefore, the holding is specific to

13  the evaluation of a settlement or payment of a claim **and** is explicitly intended to

14  protect insureds from insurers that reject reasonable settlements when to do so

15  would increase the insured's liability exposure without increasing the insurer's

16  exposure.  Because there are situations where the refusal to pay a claim or settle a

17  case results in increased exposure to the insured without a similar increase of

18  exposure to the insurer, California courts have found that refusal to settle may be

19  a breach of the implied covenant of good faith and fair dealing even though such

20  refusal is not a breach of the insurance policy.  The *Egan* court continues stating

21  that the "**standard is premised** on the insurer's obligation to protect the insured's

22  interests in defending the latter against claims . . ."  Therefore, the "evil"

23  avoided by *Egan* is the unreasonable **denial** of benefits due under an insurance

24  policy.

25      Similarly, Monarch cites *Gruenberg v. Aetna Ins. Co.* (1973) 9 Cal.3d

26  566, 573-574 stating that the duty imposed by the **implied covenant of good**

27  **faith and fair dealing** is "the obligation, deemed to be imposed by the law,

28  under which the insurer must act fairly and in good faith in discharging its

8

**REPLY MEMORANDUM IN SUPPORT OF MOTION OF DEFENDANTS TO DISMISS FIRST
AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM**

1   contractual responsibilities." Monarch's citation blatantly applies to breach of

2   the implied covenant of good faith and fair dealing and does not address breach

3   of contract. In addition, Monarch omits the qualifying statement that follows its

4   citation: "Where in so doing, it fails to deal *fairly and in good faith* with its

5   insured by refusing, without proper causes, **to compensate its insured for a loss**

6   **covered by the policy**, such conduct may give rise to a cause of action in tort for

7   breach of an implied covenant of good faith and fair dealing." *Id.* at 574 (italics

8   in original, bold added). Like that of *Egan*, the *Gruenberg* court is concerned

9   with the unreasonable **denial** of benefits due under an insurance policy, not an

10  insurer which is alleged to have provided benefits which are not due.

11      Similarly, *Foley v. Interactive Data Corp.* (1988) 47 Cal.3d 654 is

12  inapposite. *Foley* discusses wrongful discharge of employment based not on the

13  terms and conditions of the contract but out of a duty implied in law on the part

14  of the employer to conduct its affairs in compliance with public policy, e.g., an

15  employer's obligation to refrain from discharging an employee who refuses to

16  commit a criminal act. *Id.* at 667. In fact, *Foley* specifically distinguishes the

17  implied covenant in insurance policies from that found in employment contracts

18  and, in the process, supports Ranger's assertion that there can be no breach of the

19  implied covenant of good faith and fair dealing for the allegations made by

20  Monarch:

21          In our view, the underlying problem in the line of cases relied on by
            plaintiff lies in the decisions' uncritical incorporation of the
22          insurance model into the employment context, without careful
            consideration of the fundamental policies underlying the development
23          of tort and contract law in general or of significant differences
            between the insurer/insured and employer/employee relationships.
24          *When a court enforces the implied covenant it is in essence acting to
            protect "the interest in having promises performed"* (Prosser, Law of
25          Torts, op cit. *supra*, p. 613) -- the traditional realm of a contract
            action -- rather than to protect some general duty to society which
26          the law places on an employer without regard to the substance of its
            contractual obligations to its employee. Thus, in *Tameny*, 27 Cal.3d
27          167, 175-176, as we have explained, the court was careful to draw a
            distinction between "*ex delicto*" and "*ex contractu*" obligations.
28          (See, *ante*, at pp. 667-668.) *An allegation of breach of the implied*

1     *covenant of good faith and fair dealing is an allegation of breach*
    *of an "ex contractu" obligation, namely one arising out of the*
2     *contract itself. The covenant of good faith is read into contracts in*
    *order to protect the express covenants or promises of the contract,*
3     *not to protect some general public policy interest not directly tied to*
    *the contract's purposes. The insurance cases thus were a major*
4     *departure from traditional principles of contract law.*

5 *Id.* at 689-690 (emphasis added).  Monarch cites a line of California cases

6 applying the implied covenant of good faith and fair dealing to protect promises

7 arising out of the insurance policy, i.e., *ex contracto* duties, (such as accepting

8 reasonable settlements) to support its theory that an alleged violation of *ex delicto*

9 duties, namely, the consideration of how defense or settlement of covered claims

10 may affect Monarch's premiums with future insurers, breaches the covenant of

11 good faith and fair dealing implied in an insurance contract.  Effect on future

12 premiums is not directly tied to the purpose of a liability policy.  The purpose of

13 a liability policy is to protect insureds from covered claims.  Thus, *Egan* and

14 *Gruenberg* properly analyze whether the failure to protect insureds from covered

15 claims is a breach of the implied covenant of good faith and fair dealing.

16     In its Opposition, Monarch asserts that the Court pointed out that this case

17 arose in unusual circumstances because Monarch defended itself in a number of

18 separate claims actions and did not demand payments from Ranger.  See

19 Opposition, pg. 5, lines 6-19.  Contrary to Monarch's assertion, the Court did

20 not point out that "this case arose in unusual circumstances."  It was Ranger and

21 RiverStone that stated that this "was not your typical insurance coverage dispute

22 where the insured contends that the insurer failed to defend or indemnify it for a

23 claim covered under the insurance policy."  See Motion of Defendants to Dismiss

24 Action for Failure to State a Claim, pg. 1, lines 10-12.[5]

25

26     [5] Although the Court noted that it could not consider facts outside the
pleadings in deciding a motion to dismiss, Monarch's counsel admitted at the
27 hearing on Ranger and RiverStone's Motion to Dismiss that the claims at issue
were tendered by additional insureds.  Therefore, it is particularly disingenuous for
28 Monarch to make inflammatory statements such as, "Defendants have essentially
declared war on their own insured" by defending and settling claims within policy

Charlston, Revich
& Chamberlin LLP
22015.wpd

10
**REPLY MEMORANDUM IN SUPPORT OF MOTION OF DEFENDANTS TO DISMISS FIRST
AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM**

1    Ignoring that the claims at issue were tendered by additional insureds since

2    that fact was omitted from Monarch's Complaint and FAC, Monarch attempts to

3    distinguish itself because it has not "sought to have it both ways," i.e., by

4    demanding and receiving the benefit of a defense and then complaining about the

5    defense given. See Opposition, pg. 5, lines 14-18. Monarch ignores statutory

6    and settled law by so doing.

7    Monarch has relied on certain cases to show that Ranger does not have a

8    duty to defend Monarch until it tenders a claim. See, e.g., *Icasiano v. Allstate*

9    *Ins. Co.,* 103 F. Supp. 2d 1187, 1191 (N.D. Cal. 2000), *Foster-Gardner, Inc. v.*

10   *Nat'l Union Fire Ins. Co. of Pittsburgh* (1998) 18 Cal. 4th 857, 879, *North Star*

11   *Reinsurance Corp. v. Superior Court* (1992) 10 Cal. App. 4th 1815, 1823,

12   *Montrose Chem. Corp. v. Superior Court* (1993) 6 Cal. 4th 287, 295. However,

13   it is not Ranger's duty to defend Monarch that is at issue; rather it is the **right** of

14   Ranger to defend Monarch under the policy issued to Monarch. The policy

15   provides Ranger with the right to defend any suit against an insured. The express

16   language of the policy does not limit Ranger's right to defend claims actually

17   *tendered* by an insured.

18   **VII.  RANGER HAS A DIRECT AND IMMEDIATE INTEREST IN SUITS**

19   **AGAINST ITS INSUREDS BECAUSE IT IS LIABLE FOR THE**

20   **JUDGMENTS UNDER CALIFORNIA LAW**

21   In addition to the express language of the policy providing Ranger with the

22   right to defend any suit against insureds, the insurer must have a right to defend

23   any suit because it has a direct and immediate interest in the outcome of the suit.

24   The insurer is liable for all judgments against the insured for covered claims.

25   California *Ins. Code* § 11580(b)(2). Whether the insured has a right to recover

26

27   _____

28   limits against insureds. Monarch's assertions appear to be intended to obscure the
     fact that no terms of the contract between Monarch and Ranger, the claim for relief
     at issue, have been breached.

11

**REPLY MEMORANDUM IN SUPPORT OF MOTION OF DEFENDANTS TO DISMISS FIRST
AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM**

1  its voluntary payments is separate from the fact that a third party plaintiff may
2  enforce a judgment against an insurer irrespective of whether the insurer had the
3  opportunity to defend the suit in question.

4      California *Ins. Code* § 11580(b)(2) provides that a "provision that
5  whenever judgment is secured against the insured . . . in an action based upon
6  bodily injury, death, or property damage, then an action may be brought against
7  the insurer on the policy and subject to its terms and limitations, by such
8  judgment creditor to recover on the judgment."  California *Ins. Code* §
9  11580(b)(2) is construed "as if such provisions were embodied" in an insurance
10 policy "whether or not actually contain[ed]" therein.  See California *Ins. Code* §
11 11580.  See also *Safeco Ins. Co. of Am. v. Superior Court* (1999) 71 Cal. App.
12 4th 782, 786 ["An injured third party claimant has a statutory right to bring a
13 direct action against the tortfeasor's liability insurer as long as there is a judgment
14 against the insured. (*Ins. Code*, § 11580, subd. (b)(2).)"].  In *Reliance Insurance*
15 *Co. v. Superior Court* (2000) 84 Cal. App. 4th 383, the Court, citing a line of
16 cases, noted that because an insurer was bound [by *res judicata*] to previously
17 litigated liability and damage issues in an action brought by a plaintiff on its
18 judgment under *Ins. Code* § 11580, the insurer had a direct and immediate
19 interest in the litigation.  See also *Kaufman & Broad Communities, Inc. v.*
20 *Performance Plastering, Inc.* (2006) 126 Cal.App.4th 212, 221-224.  See also
21 *Carolina Casualty Ins. Co. v. Bolling, Walter & Gawthrop*, 2005 U.S. Dist.
22 LEXIS 20485 (E.D. Cal. May 31, 2005) pp. 21-22 [stating under different
23 circumstances that the position of being financially liable but powerless to ensure
24 the claim is properly defended would be untenable].  Since the policy provides
25 the insurer with the express right to control the defense, the result would be
26 inherently inequitable if the carrier could be bound by judgments without being
27 able to enforce the right, granted in the policy, to control the defense.
28 ///

1     In addition, under California law, an insurer can be held liable for failure
2 to defend a suit that it was on notice of.  Monarch has alleged that Ranger
3 defended claims it did not tender.  If Ranger defended such claims, Ranger had to
4 necessarily·be on notice that such claims existed.

5     If an insurer is provided with notice of a suit against an insured and
6 wrongfully refuses to defend the suit, it is bound by the judgment irrespective of
7 coverage defenses. See *Samson v. Transamerica Ins. Co.* (1981) 30 Cal. 3d 220,
8 239. ["Transamerica's claim of lack of notice is even less convincing in light of
9 the company's admission, in its appellate briefs, that it had actual notice of the
10 accident and the lawsuit, although not of the trial date. Indeed, it would be
11 difficult to deny such notice, since the record contains written memoranda
12 indicating that Transamerica officials were aware of the lawsuit, had notice of
13 Transamerica's potential liability, and chose to stay out of the lawsuit.
14 Transamerica is bound by the result of that lawsuit as fully as if it had
15 participated in it from the start"]. According to the Court in *Samson*, the
16 "insurance company's *obligation to defend arises when it is informed of the*
17 *accident and learns of even the potential for liability under its policy.*" *Id.*
18 (emphasis added). Counsel for Monarch has admitted during oral argument on
19 the prior Motion to Dismiss that the additional insureds tendered the subject
20 lawsuits to Ranger.

21     Moreover, an insurer can be held liable for breach of the insurance policy
22 for its failure to investigate a claim or suit further if it has been provided with
23 constructive notice of a covered claim.  See *California Shoppers, Inc. v. Royal*
24 *Globe Ins. Co.* (1985) 175 Cal. App. 3d 1 [Holding that the failure of an insured
25 to provide actual notice of a claim precludes it from recovering under the implied
26 covenant of good faith and fair dealing but that an insurer has a contractual duty
27 to investigate when provided with constructive notice of a claim].
28 ///

# VIII. RANGER DOES NOT HAVE TO ALLOW THE INSURED'S PERSONAL COUNSEL TO PARTICIPATE IN DEFENSE OR SETTLEMENT OF SUITS AGAINST AN INSURED; CALIFORNIA CIVIL CODE § 2860 PROVIDES INSUREDS WITH A RIGHT TO PARTICIPATE IN LITIGATION UNDER LIMITED AND SPECIFIC CIRCUMSTANCES

Finally, Monarch alleges in its Opposition that Ranger's failure to afford Monarch and its personal counsel with the opportunity to participate in settlements constitutes a breach of contract. See Opposition, pg. 6, lines 15-19. In so alleging, Monarch makes a conclusory statement that since an insurer is required to afford the opportunity to participate in settlements to an insured and counsel appointed under California *Civil Code* § 2860, "it is even more a requirement where the insured has paid for such counsel itself." For its novel proposition, Monarch cites not a single case.[6]

California *Civil Code* § 2860 is a statutory exception to the parties' right to enter into contracts freely.[7] California *Civil Code* § 2860(f) expressly provides that "[w]here the insured selects independent counsel pursuant to the provisions of this section, both the counsel provided by the insurer and independent counsel selected by the insured shall be allowed to participate in all aspects of the litigation." The right to participate in litigation provided by California *Civil Code* § 2860 is an exception to the insurer's contractual right to control the defense without participation from the insured. Moreover, California *Civil Code*

---

[6] Although Monarch cites *Novak v. Low, Ball & Lynch* (1999) 77 Cal.App.4th 278, *Novak* involves counsel appointed under California *Civil Code* § 2860, not personal counsel retained by the insured.

[7] Interestingly, the *Novak* court took note of Novak's causation and damage issues despite the fact that the insurer violated California *Civil Code* § 2860(f) stating that "Novak must take account of the reality that although independent counsel controls the insured's defense, *that control does not extend to preventing the insurer from exercising its contractual right to settle claims.*" *Id.* at 285 (emphasis added)

1  § 2860 does not abridge an insurer's right to **settle**.

> We note that the statute says only that "both the counsel provided by
> the insurer and independent counsel selected by the insured shall be
> allowed to participate in all aspects of the litigation." . . . The
> language that the Legislature employed does not accommodate the
> result Western desires. Instead, the provision appears to assure . . .
> neither counsel will be precluded from having a voice in the
> proceedings. Moreover, *neither the statute nor case law suggests
> that independent counsel's control of the insured's defense extends
> to preventing the insurer from exercising its contractual right to
> settle a claim as the insurer deems expedient.* If the Legislature
> intended the section to have such an effect, i.e., to abridge the
> insurer's contractual right to settle, it would have used appropriate
> language.

9  *Western Polymer Tech. v. Reliance Ins. Co.* (1995) 32 Cal. App. 4th 14, 22.

10  Therefore, not only does Ranger's settlement of claims not constitute a breach of

11  the insurance policy, Ranger has the express contractual right to settle claims

12  under California law.  Monarch has failed to state an actual breach of any of the

13  terms of the insurance contract between Monarch and Ranger.  Therefore, the

14  second Claim for Relief for Breach of Contract should be dismissed in its entirety

15  as to Ranger and RiverStone.

16  **IX.   MONARCH HAS FAILED TO STATE A CLAIM FOR RELIEF**

17  **AGAINST RIVERSTONE**

18    It is well settled under California law that insurance adjusting firms which

19  administer claims for insurers are not liable for breach of contract or bad faith

20  and do not owe any duties of care to the insured.  The Court previously ruled that

21  Monarch could assert at least some claims against RiverStone by alleging

22  additional facts accusing Riverstone of other tortious conduct.  See Order on

23  FRCP 12(b)(6) Motion, *22-23.  Although Monarch has failed to accuse

24  RiverStone of other tortious conduct, in an attempt to maintain a claim for relief

25  against the claim administrator, Monarch alleges that RiverStone is an alter ego

26  of Ranger.

27    According to Monarch, an insurance company may not hide behind an alter

28  ego it has not set up.  In support of its assertion, Monarch cites *NGOC Tran v.*

CHARLSTON, REVICH
& CHAMBERLIN LLP
2201 S.WPD

15
**REPLY MEMORANDUM IN SUPPORT OF MOTION OF DEFENDANTS TO DISMISS FIRST
AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM**

1  *Farmers Group, Inc.* (2002) 104 Cal. App. 4th 1202. Monarch expressly states

2  that "alter ego liability applies to avoid permitting an insurance defendant to

3  escape liability . . ." See Opposition, pg. 3, lines 18-19. Since Ranger, the

4  insurance company, is not hiding behind any entity to avoid liability, the import

5  of Monarch's assertions is unclear. In any event, *NGOC Tran* is inapposite. In

6  *NGOC Tran*, the court held:

7  > the ***attorney-in-fact*** owes the insured a limited fiduciary duty under
   > the power of attorney . . . and . . . the ***attorney-in-fact*** may be liable
8  > for breach of the covenant of good faith and fair dealing implied in
   > the insurance contract, if the insured can establish the conditions for
9  > application of the "alter ego" or "single enterprise" doctrine.

10  *Id.* at 1206 (emphasis added). *NGOC Tran* is a holding that applies only to a

11  specific limited scenario where an attorney-in-fact, deriving its authority from a

12  power of attorney executed by the **insureds**, is the managerial agent of reciprocal

13  insurers, otherwise known as an interinsurance exchange, an unincorporated

14  business organization. In this limited set of circumstances, the attorney-in-fact

15  may owe a fiduciary duty to the insureds who appointed it and who own the

16  policies because it would be inequitable to permit the attorney-in-fact to escape

17  liability "when the exchange functions as a mere instrumentality of an

18  attorney-in-fact in the conduct of a unified insurance business." *Id.* at 1220.

19      In *NGOC Tran*, the plaintiff presented a Securities and Exchange

20  Commission filing showing that Farmers Group was appointed by policyholders

21  as their exclusive attorney-in-fact to provide management services with respect to

22  three insurance exchange insurers owned by the policyholders. In its capacity as

23  the attorney-in-fact appointed by the policyholder-owners, Farmers Group

24  selected risks, issued policies, prepared and mailed invoices, collected premiums,

25  managed the investment portfolios and performed certain other administrative

26  functions. *Id.* at 1208.

27  > Courts which have considered the relationship between a reciprocal
   > insurer's board, its attorney-in-fact and its subscribers have
28  > concluded the relationship is analogous to the relationship between

CHARLSTON, REVICH
& CHAMBERLIN LLP
2201 S.WPD

16
**REPLY MEMORANDUM IN SUPPORT OF MOTION OF DEFENDANTS TO DISMISS FIRST
AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM**

1    the directors, management and participants in other kinds of
     organizations. For example, at least one court has held that "[t]he
2    position of the attorney-in-fact of a reciprocal insurance exchange,
     who manages the business of the exchange under powers of attorney
3    of the subscribers . . . is fiduciary in character to the same extent as
     that of the management of an incorporated mutual insurance
4    company . . . ."

5    *NGOC Tran v. Farmers Group, Inc., supra*, 104 Cal. App. 4th at 1210-1211

6    (citations omitted).  *NGOC Tran* is a holding that applies in obviously limited

7    situations.  In this case, Ranger is not a reciprocal insurance exchange and is not

8    owned by its policyholders; RiverStone is not an attorney-in-fact appointed by the

9    policyholders thereby owing a fiduciary duty to them, nor does Monarch make

10   these assertions.  RiverStone is subject to the settled law that third-party claim

11   administrators owe no duty to an insured.

12       Monarch has not otherwise properly pled that RiverStone is an alter ego of

13   Ranger.  Monarch cannot meet either of the two prongs necessary to even assert

14   liability under the alter ego doctrine.  First, for a court to pierce the corporate

15   veil it must determine that there is bad faith conduct on the part of the parent

16   corporation that would otherwise remain without remedy.  See *Sonora Diamond*

17   *Corp. v. Superior Court* (2000) 83 Cal. App. 4th 523, 539.  In overturning a

18   district court's finding that a shareholder of a parent who exercised significant

19   control was the alter ego of the subsidiary, the Ninth Circuit held in *Katzir's*

20   *Floor & Home Design. Inc. v. M-MLS.com*, 394 F.3d 1143, 1149 (9th Cir. 2004)

21   (citations omitted) that "the injustice that allows a corporate veil to be pierced is

22   not a general notion of injustice; rather, it is the injustice that results only when

23   corporate separateness is illusory."  The court noted that factors signaling that it

24   would be inequitable to respect separate corporate identities included "inadequate

25   capitalization, commingling of assets, [or] disregard of corporate formalities."

26   *Id.* (citations omitted).  In order to sufficiently state a claim for relief based on

27   the alter ego doctrine, a plaintiff must *allege the specific factors demonstrating*

28   *that it would be inequitable to respect Ranger's corporate entity.*  See *Nordberg,*

**REPLY MEMORANDUM IN SUPPORT OF MOTION OF DEFENDANTS TO DISMISS FIRST**
**AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM**

1 │ *et al. v. Trilegiant Corporation, et al.*, 445 F. Supp. 2d 1082 (N.D. Cal. 2006).

2 │     Secondly, Monarch must allege that Ranger is a mere instrumentality of

3 │ RiverStone.  See *Hollywood Cleaning & Pressing Co. v. Hollywood Laundry*

4 │ *Serv. Inc.* (1932) 217 Cal. 124, 129.  See also *Nordberg, et al. v. Trilegiant*

5 │ *Corporation, et al., supra*, 445 F. Supp. 2d at 1102 finding a conclusory

6 │ statement that Trilegiant Corporation was merely an instrumentality of Cendant

7 │ Corporation insufficient.

8 │     The policy purpose behind these requirements is clear:

9 │     In order to cast aside the legal fiction of distinct corporate existence
10 │ as distinguished from those who own its capital stock, it is not
 │ enough that it is so organized and controlled and its affairs so
11 │ managed as to make it 'merely an instrumentality, conduit, or
 │ adjunct' of its stockholders, but it must further appear that they are
12 │ the 'business conduits and alter ego of one another,' and that to
 │ recognize their separate entities would aid the consummation of a
13 │ wrong. Divested of the essentials which we have enumerated, the
 │ mere circumstance that all the capital stock of a corporation is owned
14 │ or controlled by one or more persons, does not, and should not,
 │ destroy its separate existence; were it otherwise, few private
15 │ corporations could preserve their distinct identity, which would mean
 │ the complete destruction of the primary object of their organization.

16 │ *Erkenbrecher v. Grant* (1921) 187 Cal. 7, 11.

17 │     In *Nordberg, et al. v. Trilegiant Corporation, et al., supra*, 445 F. Supp.

18 │ 2d 1082, the Court sustained a motion to dismiss alter ego claims against Cendant

19 │ Corporation without leave to amend based on the lack of any pleaded facts

20 │ supporting either the notion that inequity would result or that Trilegiant

21 │ Corporation was a mere instrument of Cendant Corporation.  In *Nordberg*, the

22 │ plaintiffs asserted that Trilegiant Corporation was a subsidiary controlled by

23 │ Cendant Corporation and that Cendant Corporation had majority representation

24 │ on Trilegiant Corporation's board.  Even these pleaded facts were insufficient

25 │ because "routine control of a subsidiary by a parent is insufficient to support the

26 │ contention that a subsidiary is a mere instrumentality."  *Id.* at 1102.  See also

27 │ *Institute of Veterinary Pathology, Inc. v. California Health Labs, Inc.* (1981) 116

28 │ Cal. App. 3d 111, 119-20 [Even ownership of 100% of subsidiary's stock is

18

REPLY MEMORANDUM IN SUPPORT OF MOTION OF DEFENDANTS TO DISMISS FIRST
AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM

1    insufficient to pierce the corporate veil]; *Katzir's Floor & Home Design. Inc. v.*

2    *M-MLS.com*, 394 F.3d 1143, 1149 (9th Cir. 2004) ["the mere fact of sole

3    ownership and control does not eviscerate the separate corporate identity that is

4    the foundation of corporate law."]

5        In support of its alter ego claim, Monarch only alleges that Ranger and

6    RiverStone are "sister companies and the alter ego of each other . . . and entered

7    into a scheme, whereby RiverStone takes action in conjunction with Ranger and

8    with Ranger's approval, authority and/or consent, to the detriment of Ranger's

9    policyholders . . ." See FAC, ¶ 6.  Even if these allegations are true, which the

10   Court must assume for the purpose of ruling on this motion, the alter ego claim

11   fails as a matter of law because Monarch has not pled sufficient facts to satisfy

12   the first prong, i.e., bad faith conduct on the part of Ranger *that would remain*

13   *without remedy* if RiverStone was dismissed.[8]  Nor has Monarch pled sufficient

14   facts  to satisfy the second prong; "approval, authority and/or consent" does not

15   demonstrate that Ranger is a "mere instrumentality" of RiverStone.  Even control

16   or 100% ownership of stock would be insufficient to demonstrate that Ranger is a

17   "mere instrumentality" of RiverStone.  Without pleading facts demonstrating

18   both of these prongs, Monarch's alter ego claim against RiverStone fails as a

19   matter of law.

20   ///

21   ///

22   ///

23   ///

24   

-----

25       [8] A typical example of bad faith conduct on the part of an entity that would
     "remain without remedy" if the alter ego was dismissed is exemplified in *Shea v.*
26   *Leonis* (1939) 14 Cal. 2d 666.  In *Shea*, the plaintiff alleged that the lessee was
     attempting to escape liability for rent due under a lease by assigning his interest in
27   the lease to a corporation which was without other assets.  The court held that it is
     proper to disregard corporate existence "where . . . the device adopted is . . . an
28   attempt to avoid liability for benefits enjoyed by means of taking the obligation in
     the name of a specially organized corporation which has no assets." *Id*. at 669.

19

**REPLY MEMORANDUM IN SUPPORT OF MOTION OF DEFENDANTS TO DISMISS FIRST
AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM**

1 **X.    CONCLUSION**

2      For the foregoing reasons, Defendant RiverStone respectfully requests this

3 Court to dismiss Plaintiff's FAC in its entirety with prejudice pursuant to Rule

4 12(b)(6).  Defendant Ranger respectfully requests this Court to dismiss the second

5 Claim for Relief for Breach of Contract in Plaintiff's FAC with prejudice pursuant

6 to Rule 12(b)(6).

7

8 DATED: December 4, 2006      Respectfully submitted,

9                              CHARLSTON, REVICH & CHAMBERLIN LLP
                               ROBERT W. KEASTER
10                             YVONNE M. SCHULTE

11

12                            By: _____
13                                 Robert W. Keaster,
14                             Attorneys for RANGER INSURANCE
                               COMPANY AND RIVERSTONE CLAIMS
                               MANAGEMENT, LLC
15

16

17

18

19

20

21

22

23

24

25

26

27

28

**REPLY MEMORANDUM IN SUPPORT OF MOTION OF DEFENDANTS TO DISMISS FIRST
AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM**